Sean D. Reyes, Utah Bar # 7969
UTAH ATTORNEY GENERAL
Spencer E. Austin, Utah Bar # 150
Chief Criminal Deputy Attorney General
Craig L. Barlow, Utah Bar # 213
Assistant Attorney General
Utah Attorney General's Office
350 North State Street, Suite 230
Salt Lake City, Utah 84114-2320
Telephone:  (801) 366-0310
Facsimile:  (801) 366-0315
spenceraustin@agutah.gov

Peter Hsiao (*pro hac application pending*)
Matthew L. Hofer (*pro hac application pending*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
phsiao@mofo.com

**Attorneys for Plaintiff
The State of Utah**

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| THE STATE OF UTAH,<br><br>        Plaintiff,<br><br>v.<br><br>ENVIRONMENTAL RESTORATION, LLC;<br>HARRISON WESTERN CORPORATION;<br>KINROSS GOLD CORPORATION;<br>KINROSS GOLD U.S.A., INC.;<br>SUNNYSIDE GOLD CORPORATION; and<br>GOLD KING MINES CORPORATION,<br><br>        Defendants. | **COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case No.<br><br>Judge: |

<u>COMPLAINT</u>

## INTRODUCTION AND STATEMENT OF THE CASE

1.      On August 5, 2015, the United States Environmental Protection Agency ("EPA") and its contractors negligently breached an entrance into the Gold King Mine, causing a blowout with approximately three million gallons of toxic waste spilling into the Animas River in southwestern Colorado ("Blowout"). The waste then flowed to the San Juan River and Lake Powell causing environmental damage to the State of Utah.

2.      EPA concedes it is responsible for the Blowout and the resulting impacts:  **"EPA takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand    with    the    impacted    local    governments,    states    and    tribes."** https://www.epa.gov/goldkingmine. (Emphasis added).

3.      EPA's contractors were also negligent in causing the Blowout. The mine owners and operators are strictly liable and/or negligent for generating the waste and creating the conditions leading to Blowout.

## JURISDICTION

4.      Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 (civil action arising under the laws of the United States), 1367 (supplemental jurisdiction), 2201 (declaratory relief), and 2202 (injunctive relief).

5.      Jurisdiction is also proper in this Court under 42 U.S.C. §§ 9613(b) and 9613(g)(2) under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA).

## VENUE

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(e)(1)(B) and 42 U.S.C. § 9613(b).

## PARTIES

7.      The Attorney General for the State of Utah is authorized to bring this action for the State of Utah. UTAH CODE ANN. §§ 19-1-204, 67-5-1(2).

8.      Defendant Environmental Restoration is a Missouri limited liability company with its principal office at 1666 Fabrick Drive, St. Louis, Missouri 63026. Environmental Restoration was EPA's primary contractor at all relevant times for emergency and rapid response services at the Gold King Mine.

9.      Defendant Harrison Western Corporation is a Colorado corporation with its principal office located at 1208 Quail Street, Lakewood, Colorado 80215. Harrison Western was at all relevant time a subcontractor for Environmental Restoration for mining services at the Gold King Mine.

10.     Defendant Kinross Gold Corporation ("Kinross") is a Canadian corporation with its principal office at 25 York Street, 17th Floor, Toronto, Ontario M5J 2V5, Canada. Upon information and belief, Kinross currently owns the Sunnyside Mine and neighboring properties near Silverton, Colorado, through its subsidiaries Kinross Gold U.S.A., Inc. and Sunnyside Gold.

11.     Defendant Kinross Gold U.S.A., Inc. ("Kinross U.S.A.") is a Nevada corporation with a principal office registered with the Colorado Secretary of State at 5075 S. Syracuse Street, 8th Floor, Denver, Colorado 80237. Upon information and belief, Kinross U.S.A. is a subsidiary of Defendant Kinross, and has transacted business in Colorado since 2003. Kinross U.S.A. directly owns Defendant Sunnyside Gold.

12.     Defendant Sunnyside Gold Corporation is a Delaware corporation with a principal office registered with the Colorado Secretary of State at 5075 S. Syracuse Street, 8th Floor, Denver, Colorado 80237. Upon information and belief, it currently owns the Sunnyside Mine and other properties near Silverton.

2

13.    Defendant Gold King Mines Corporation ("Gold King Corp.") is, and at all relevant times was a Colorado corporation with its principal office located at 729 Reese Street, Silverton, Colorado 81433. It formerly owned the Gold King Mine, and was at relevant times responsible for managing discharges from the Sunnyside Mine and other neighboring mines.

14.    The Defendant corporations fit into two groups. The first were EPA's contractors for the negligent work at the Gold King Mine site ("Contractor Defendants"). The second were mine owners who generated the toxic waste and negligently created the dangerous conditions at the site. ("Owner Defendants").

**GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

*History of Mining Activity*

15.    The Gold King Mine is a former gold mine located in southwestern Colorado.

16.    Beginning in 1959, the owner of the nearby Sunnyside Mine developed the "American Tunnel" as a drainage and ore transportation passage for the Sunnyside Mine. The American Tunnel was originally an exploratory tunnel into the Gold King vein system and provided a pathway for contaminated water to move from the Sunnyside Mine to the Gold King Mine.

17.    In 1991, Defendant Sunnyside Gold owned the Sunnyside Mine and closed it, operating a treatment facility for its contaminated wastewater. In 1996, Sunnyside Gold signed a consent decree with the Colorado Department of Health and Environment allowing it to cease treating contaminated wastewater if it would undertake reclamation of other acid sources in the area.

18.    Sunnyside Gold installed hydraulic bulkheads in the American Tunnel and other locations. The bulkheads blocked the drainage from the American Tunnel and reduced the discharge there, but caused acid drainage to flood the Sunnyside Mine.

3

19. An "adit" is a horizontal passage into a mine. After the Sunnyside Mine bullheads were installed in 1996, the toxic wastewater backed-up and entered the Gold King Mine causing it to discharge from the Gold King Mine Level 7 Adit.

20. In 2000, toxic wastewater from the Sunnyside Mine also began discharging from the nearby Mogul Mine. In 2003, Sunnyside Gold installed bulkheads at the Mogul Mine.

*Relationship Between Owner Defendants*

21. In 2003, Defendant Kinross acquired Sunnyside Gold and its assets, including the Sunnyside Mine. Upon information and belief, Kinross and Kinross U.S.A. controlled and directed Sunnyside Gold's activities at the Sunnyside Mine.

22. Upon information and belief, on May 1, 2003 Kinross provided a $1,250,000 irrevocable letter of credit to the Colorado Division of Minerals and Geology as surety for its reclamation work at the American Tunnel, but later reduced and then eliminated the surety.

23. In 2002, Mr. Todd Hennis, the owner of the Mogul Mine, sued Sunnyside Gold for its wastewater impacts to the Mogul Mine, but dropped the lawsuit after Sunnyside Gold agreed to install bulkheads at the Mogul and neighboring Koehler Mine.

24. Upon information and belief, Sunnyside Gold transferred ownership of its water treatment facility and discharge permit for the American Tunnel to Gold King Corp. in January 2003. Gold King Corp. and its owner Mr. Steve Fearn became the operators of the facility.

25. Upon information and belief, the Colorado Department of Public Health and Environment Water Quality Control Division required Mr. Fearn to obtain a certification to operate the water treatment facility by June 30, 2004. Upon further information and belief, Sunnyside Gold's manager of reclamation activities was to supervise Mr. Fearn until he acquired the certification. Upon further information and belief, Mr. Fearn never obtained the certification, and use of the facility was discontinued. In 2004, Gold King Corp. filed for bankruptcy, and Mr. Hennis acquired the Gold King Mine.

*Reclamation Activities*

26.    The Gold King Mine operated under a mining permit in 1986. The permit required that at the end of mining activities, the mining company close all four mine portals, and a bond was held to ensure that would be done.

27.    After Gold King Corp. discontinued operating the water treatment facility and filed for bankruptcy, the Colorado Division of Reclamation, Mining and Safety ("DRMS") imposed forfeiture of the bond and used it to fund reclamation work at the Gold King Mine site.

28.    In 2007, increased wastewater flow from the Gold King Mine Level 7 Adit caused a slope failure and landslide at the adit's waste-rock dump. The debris blocked the entrance to the adit.

29.    DRMS's Project Summary expressed concern that water could build up behind the collapsed material at that adit and eventually result in a blowout. There was also concern about additional instability of the waste-rock dump.

30.    In 2009, DRMS unsuccessfully attempted to penetrate the debris blocking the adit with an observation pipe. DRMS' efforts to close the adit did not provide adequate drainage and had the potential to cause a blowout.

31.    In 2014, DRMS requested EPA reopen and stabilize the adit. By that time, the drainage system at the mine portal had not been maintained or monitored since its installation in 2009.

32.    EPA began a removal site evaluation to investigate the possibility of opening the collapsed mine portal in 2014, using the services of contractors under EPA Superfund Technical Assessment and Response Team (START) and EPA Emergency and Rapid Response Service (ERRS) contracts.

33.    Defendant Environmental Restoration was the ERRS contractor at the Gold King Mine and Weston Solutions was the START contractor. Environmental Restoration

5

subcontracted with Defendant Harrison Western for mining services at the Gold King Mine. Harrison Western participated in planning for work to be performed at the Gold King Mine in 2015 and was scheduled to deploy to the mine later in August 2015.

34.    In its ERRS contract task order, EPA identified the following risks at the site:

> Conditions may exist that could result in a blow-out of the blockages and cause a release of large volumes of contaminated mine waters and sediment from inside the mine, which contain concentrated heavy metals.

EPA further specified that the work was to serve the following purpose:

> [R]e-open the Gold King Mine portal and workings to investigate the conditions to assess the on-going releases. This will require the incremental de-watering and removal of such blockages to prevent blowouts.

35.    EPA's task order also acknowledged the risk of an unstable increase in the water level inside Gold King Mine when the agency required that its ERRS contractor incrementally dewater and remove blockage so as to prevent blowouts.

36.    When EPA and the Contractor Defendants began their excavation work in 2014, they observed that seepage was emerging from the backfill at an elevation about six feet above the adit floor. They presumed that water had accumulated behind the blockage.

37.    Those onsite incorrectly concluded that there was six feet of water impounded in the mine because seepage was not occurring higher up on the blockage.

38.    EPA and the Contractor Defendants suspended their work until 2015 because they uncovered conditions that required them to plan to treat a greater quantity of water potentially accumulated behind the blockage.

6

*The Blowout*

39.    On or about July 23, 2015, the EPA project leader and lead On Scene Coordinator ("OSC") Mr. Steven Way placed a phone call to Mr. Michael Gobla at the Bureau of Reclamation ("BOR"). Mr. Way requested that Mr. Gobla conduct a site visit for the Gold King Mine because Mr. Way was "unsure about the plans for the Gold King Mine" and wanted an outside independent review of the EPA/DRMS plans by the BOR. Mr. Gobla agreed to conduct a site visit and review on August 14, 2015.

40.    Mr. Way, the lead OSC, was on vacation on August 4-5, 2015. He was replaced at the Gold King site by the backup OSC, Mr. Hays Griswold, on those days.

41.    On August 4, 2015, EPA, DRMS, Environmental Restoration, and Weston Solutions ("EPA's On Site Team") created a plan to conduct excavation activities at the Level 7 Adit.

42.    EPA's On Site Team observed contaminated water seeping out at an elevation about five or six feet above the floor of the adit.

43.    EPA's On Site Team assumed this meant that the contaminated water level was below the top of the adit.

44.    EPA's On Site Team also assumed that because the mine was draining, it was not under pressure from the contaminated water behind it.

45.    Thus, the EPA On Site Team believed it was not necessary to directly test for the level or volume of contaminated water behind the blockage.

46.    The EPA On Site Team did not insert a measuring device from a location at a higher elevation from the blockage at the adit to determine the level of contaminated water behind it.

47.    The EPA On Site Team did not take a measurement to determine the pressure of the contaminated water against the blockage at the adit.

7

48.     The EPA On Site Team did not take the precaution of installing a secondary containment system, including but not limited to a large catch basin, to prevent an accidental release of large quantities of toxic wastewater from reaching the Animas River.

49.     The EPA On Site Team also did not take the precaution of developing and implementing emergency response procedures in the event of an accidental release of large quantities of toxic wastewater, to prevent those toxic chemicals from reaching the Animas River.

50.     Defendants were required to develop a Health and Safety Plan that complied with OSHA requirements for hazardous waste site operations in 29 C.F.R. § 1910.120 and with EPA regulations for response actions per 40 C.F.R. § 300.700(c)(5)(i). Defendants' Health and Safety Plan did not comply with these requirements.

51.     On August 5, 2015, the EPA On Site Team performed work at the Level 7 Adit.

52.     The EPA On Site Team did not accurately measure the level, volume or pressure of the toxic wastewater behind the blockage before they performed their work on August 5, 2015.

53.     Members of the EPA On Site team on-site have given conflicting reports regarding their work. Some believed their objective was to excavate the adit to create an opening. Others believed the objective was to use a backhoe excavator to scratch the earth around the adit.

54.     On information and belief, this conflict was caused by miscommunication among the EPA On Site Team.

55.     The intentional actions of the EPA and Contractor Defendants caused a breach in the adit, resulting in the Blowout.

56.     The Blowout released approximately 3,000,000 gallons of hazardous, toxic orange-brown wastewater into the Animas River.

8

57.    Toxic contaminants from the Blowout have been transported through the Animas and San Juan River system to Lake Powell in the State of Utah.

58.    The Blowout has caused environmental, economic and other damage to the State of Utah, and will require the incurrence of recoverable costs from Defendants, including but not limited to those for the immediate response, investigation, remediation, restoration and compensation for damages, lost environmental values and use.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### COST RECOVERY AND OTHER RELIEF UNDER CERCLA 42 U.S.C. § 9607(a) AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

59.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

60.    Defendants are "persons" under CERCLA.  42 U.S.C. § 9601(22).

61.    The Owner Defendants are "owners" and "operators" of the Sunnyside Mine, or were "owners" and "operators" at the time hazardous substances were disposed of at the Sunnyside Mine.  42 U.S.C. §§ 9607(a)(1)-(2).

62.    Gold King Corp. was an "owner" and "operator" of the Gold King Mine at relevant times when hazardous substances were released or disposed of at that facility.

63.    By managing, directing, and implementing reclamation activities at the Gold King Mine site, the Contractor Defendants were "operators" of the Gold King Mine when the Blowout occurred.

64.    Defendants are "arrangers" under CERCLA because they, by contract, agreement or otherwise, intentionally arranged for the disposal, treatment, and/or transport of hazardous substances released from the Gold King Mine and other nearby mines.  42 U.S.C. § 9607(a)(3). Defendants owned or possessed the hazardous substances that were released in the Blowout.

65.     Leading up to and at the time of the Blowout, the Contractor Defendants accepted hazardous substances from the Sunnyside Mine and the Gold King Mine, and undertook to dispose, treat, and transport hazardous substances to disposal or treatment facilities, or sites selected by the Contractor Defendants. Releases of hazardous substances from those facilities and/or sites occurred. The Contractor Defendants were thus "transporters" under CERCLA. 42 U.S.C. § 9607(a)(4).

66.     The Contractor Defendants are "response action contractors" under CERCLA. 42 U.S.C. § 9619(a). Under CERCLA § 9619(a)(2), a response action contractor shall be liable for a release caused by its negligence, gross negligence, or intentional misconduct. The Contractor Defendants' negligence, gross negligence, and intentional misconduct caused or contributed to the release of hazardous substances from the mines.

67.     The Gold King Mine and Sunnyside Mine are "facilities" under CERCLA. 42 U.S.C. § 9601(9). Furthermore, the numerous downstream reaches of the San Juan River and Lake Powell, where hazardous substances from the mines have been deposited, are separate "facilities" under CERCLA.

68.     "Releases" of "hazardous substances"—including arsenic, lead, mercury, cadmium, aluminum, and zinc—from these facilities have occurred and are still occurring. 42 U.S.C. §§ 9601(22) and (14). These releases include the August 5, 2015 Blowout, as well as past and present releases from the Sunnyside mine pool through the Gold King Mine, the Sunnyside Mine, and surrounding areas owned or operated by Defendants. Defendants' actions substantially caused and contributed to the contamination of the San Juan River and Lake Powell in the State of Utah, and they are jointly and severally liable for the resulting indivisible harms and contamination.

69.     The State of Utah is a "State" authorized to recover costs to assess damages, and damages and the cost of restoration to natural resources under CERCLA. 42 U.S.C. § 9607(a).

Section 9607(a) provides that the State of Utah may also recover interest on response costs incurred. The State of Utah in no way caused, contributed to, or consented to the Blowout, and is not affiliated with any other party that is potentially liable for the response costs.

70.     The State of Utah has taken reasonable steps to investigate and address any continuing release, prevent any threatened release, and prevent or limit human, environmental, or natural resource exposure to hazardous substances from the Blowout.

71.     Because of these "releases" and the substantial threat of future releases, the State of Utah has incurred and continues to incur response costs that are both "necessary" and "not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4) and (a)(4)(B). These costs include but are not limited to costs associated with the response, investigation, remediation, restoration and compensation for lost environmental values and use, providing clean water supplies to the people of the State of Utah, testing and assessing the quality of the soil and water affected by the Blowout, responding and reacting to the crisis, and attorneys' fees, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT UNDER CERCLA 42 U.S.C § 9613(G)(2) AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

72.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

73.     CERCLA specifies that in any action for recovery of costs under 42 U.S.C. § 9607 "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs . . . ." 42 U.S.C. § 9613(g)(2).

74.     The State of Utah will continue to incur response costs, including but not limited to address the contamination of the San Juan River and Lake Powell.

75.   The State of Utah is entitled to entry of a declaratory judgment that Defendants are jointly and severally liable for future costs and damages, including but not limited to response costs and natural resource damages assessment costs and damages based on the contamination of the San Juan River and Lake Powell, to the extent that those costs are not inconsistent with the National Contingency Plan.

## THIRD CAUSE OF ACTION

### NEGLIGENCE AND GROSS NEGLIGENCE AGAINST ENRVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

76.   The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

77.   Defendants knew or should have known about the presence and potential for spreading of contamination at Gold King Mine, and had a duty to design and plan their tasks, including but not limited to those to oversee, manage, maintain, and regulate the Gold King Mine and Sunnyside Mine with reasonable care.  They also had a duty to conduct all investigations and work activities at the mines with reasonable care.  This includes, but is not limited to, following reasonable engineering, mining, safety, and other applicable standards in the industry, as well as EPA and OSHA regulations.  They also had a duty to take reasonable precautions in case of an accidental release, including but not limited to implementing secondary containment measures and an emergency response plan.  It was foreseeable that the failure to use reasonable care in performing these activities would cause injuries and damages to states, local communities, and individuals downstream of the mines, including the State of Utah.

78.   Defendants knew or should have known that the conditions at the Gold King Mine presented a high risk of significant harm to the State of Utah and other downstream communities, but Defendants acted in disregard of that risk.

79.     Defendants acted with negligence, gross negligence, carelessly, recklessly, intentionally and wantonly in managing and disposing of contaminated wastewater in the Gold King Mine and other area mines, such that they directly and proximately caused contamination of the San Juan River, Lake Powell, and the surrounding environs.

80.     The EPA On-Site Team additionally breached their duties and acted with negligence and gross negligence by excavating prior to the arrival of the subcontractor with the experience and expertise necessary to safely excavate the Gold King Mine adit.

81.     As a direct and proximate cause of Defendants' acts and omissions as alleged herein, the State of Utah has been and continues to be damaged, including but not limited to contamination of the San Juan River, Lake Powell, and the surrounding environs have been and continue to be contaminated, causing the State of Utah significant injury and damage.

82.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State of Utah has incurred, is incurring, and will continue to incur damages, including but not limited to investigation, treatment, remediation, and monitoring costs and expenses related to the contamination of its land and water in an amount to be proven at trial.

83.     Defendants acted together to create the conditions that harmed the State of Utah. The harm caused by Defendants' tortious conduct is indivisible and they are jointly and severally liable.

84.     For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly, and with conscious disregard of the known risks of injury to others, including the State of Utah. The State of Utah is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## FOURTH CAUSE OF ACTION

### PUBLIC NUISANCE AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

85.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

86.    The use and enjoyment of the San Juan River, Lake Powell, and other areas including but not limited to the biota, lands, waters, and sediments therein, are rights common to, and belonging to, all members of the public.

87.    Defendants' negligent, grossly negligent, reckless, and/or intentional conduct caused the Blowout on August 5, 2015.

88.    The contamination and other harms resulting from the Blowout have unreasonably interfered with the public's use and enjoyment, including but not limited to the San Juan River and Lake Powell.

89.    Defendants' negligent, grossly negligent, reckless, and/or intentional actions have directly and proximately caused contamination that significantly interferes with the public health, the public safety, the public comfort, and the public convenience.

90.    Defendants' conduct is proscribed by applicable state and federal statutes, ordinances, and/or administrative regulations.

91.    The resulting contamination, including but not limited to that of the San Juan River and Lake Powell and surrounding environs that resulted from releases of hazardous substances caused by Defendants, constitutes a physical invasion of public and private property.

92.    The State of Utah has suffered special injuries, which the public as a whole does not share. The State of Utah has and will continue to suffer lost economic activity, tax revenues, and stigmatic damages arising from these releases. This unlawful interference by the Defendants directly and proximately caused, and continues to cause, injury to the State and people of the State of Utah's property and other legal interests.

14

93.    The past, present, and ongoing conduct of Defendants, and the contamination caused by their conduct, constitute a public nuisance. These injuries are continuing and have caused long-lasting, possibly permanent, harm to the State of Utah's public and its environment. This public nuisance will continue as long as the San Juan River, Lake Powell, and surrounding areas are contaminated with the hazardous substances released in the Blowout.

94.    Defendants acted in concert, or successively. The harm caused by Defendants' tortious conduct is indivisible and they are jointly and severally liable.

95.    The State of Utah is entitled to recover damages from Defendants in an amount to be proven at trial.

96.    The State of Utah is entitled to entry of an order compelling Defendants, jointly and severally, to abate the nuisance.

97.    For the reasons set forth and specifically alleged above, the State of Utah is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

### FIFTH CAUSE OF ACTION

### TRESPASS AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

98.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

99.    Because the San Juan River and Lake Powell are partially located in the State of Utah, the State of Utah owns or has other legal property rights and interests in and on the land affected by the Blowout.

100.    Defendants are and were at all relevant times required to abstain from unlawfully intruding or invading upon the State of Utah's property rights. The State of Utah has not consented to and does not consent to the trespass alleged herein.

101.    Defendants are liable for trespass and continued trespass because they negligently, recklessly, and/or intentionally failed to properly control and dispose of contaminated wastewater, such that Defendants directly and proximately caused contaminants to enter, invade, intrude upon and injure the State of Utah's possession of property. The invasion of these contaminants has directly and proximately caused the State of Utah significant injury and damage, including impairing the physical condition of its property.

102.    Defendants knew or should have known that, in the event of a blowout, highly contaminated water and hazardous substances impounded behind the Level 7 Adit at the Gold King Mine would flow into Cement Creek, and from there would make its way down the Animas and San Juan Rivers, crossing into the State of Utah and ultimately into Lake Powell.

103.    As long as the State of Utah's waterways and surrounding areas remain contaminated with these hazardous substances, the trespass will continue.

104.    This invasion by Defendants directly and proximately caused injury to the State of Utah's property rights in various ways, including but not limited to the elimination of sources of tourism revenue and recreation, the destruction of vegetation in areas surrounding the San Juan River and Lake Powell and property dependent on resources from those waterways, and as otherwise described herein. As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State of Utah has incurred, is incurring, and will continue to incur, investigation, treatment, remediation and monitoring costs related to the contamination.

105.    The harm caused by Defendants' tortious conduct is indivisible and they are jointly and severally liable to the State of Utah for compensatory and restitutionary damages in an amount to be determined at trial.

106.    The State of Utah is entitled to entry of an order compelling Defendants, jointly and severally, to abate the trespass.

107.    For the reasons set forth and specifically alleged above, the State of Utah is entitled to an award of punitive damages against Defendants that is sufficient to punish the Defendants and that fairly reflects the aggravating circumstances alleged herein.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE UTAH WATER QUALITY ACT AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

108.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

109.    Defendants are all "persons" within the meaning of the Utah Water Quality Act, UTAH CODE ANN. § 19-5-101 *et seq.*

110.    By taking the actions described above, Defendants have discharged pollutants into waters of the State of Utah.  UTAH CODE ANN. § 19-5-107(1)(a).

111.    Defendants have caused pollution that is harmful to wildlife, fish and/or aquatic life, and/or impairs domestic, agricultural, industrial, recreational, and/or other beneficial uses of water.  *Id.*

112.    Defendants have placed wastes and/or caused wastes to be placed in a location where there was probable cause to believe the wastes would cause pollution.  *Id.*

113.    Accordingly, Defendants are liable to the State of Utah for damages, a penalty of up to $10,000 per day of violation, a temporary or permanent injunction to address the violation, and other relief as the Court deems appropriate.  UTAH CODE ANN. §§ 19-5-115(2), (7)(a); 19-1-303(1)(a)(i).

114.    These violations of law and the resulting harms are continuing and ongoing.  Each day the pollutants are present or persist in the State of Utah's soil, sediment and water constitutes a separate and independent violation.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE UTAH SOLID AND HAZARDOUS WASTE ACT AGAINST ENVIRONMENTAL RESTORATION, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

115.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

116.    Defendants are all "persons" within the meaning of the Utah Solid and Hazardous Waste Act, UTAH CODE ANN. § 19-6-101 *et seq.*

117.    The Blowout released hazardous substances into the waters and land of the State of Utah, within the meaning of the Utah Solid and Hazardous Waste Act.  § 19-6-102(10).

118.    By taking the actions described above, Defendants are contributing or have contributed to the handling, transportation, treatment, storage, or disposal of a solid or hazardous waste which presents an imminent and substantial danger to the environment. *Id.*

119.    Accordingly, Defendants are liable for a penalty of up to $13,000 per day of violation, a temporary or permanent injunction to address the violation, and other relief as the Court deems appropriate. *Id.*; §§ 19-6-113(2); 19-1-303(1)(a)(i).

120.    These violations of law and the resulting harms are continuous and ongoing, and each day that the hazardous wastes are present or persist in the State of Utah's soil, sediment or water constitutes an additional violation.

### JURY TRIAL DEMAND

121.    The State of Utah demands a jury trial for all appropriate issues.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff the State of Utah prays for an order and judgment:

122.    Declaring that all Defendants are jointly and severally liable under CERCLA, 42 U.S.C. § 9607(a), for all costs, including prejudgment interest incurred by the State of Utah in responding to releases or threatened releases of hazardous substances from the Gold King, the Sunnyside Mine, or the American Tunnel to the date of judgment;

123.    Declaring that all Defendants are jointly and severally liable under CERCLA, 42 U.S.C. § 9613(g)(2), for all response costs that will be incurred by the State of Utah in responding to releases or threatened releases of hazardous substances from the Gold King Mine, the Sunnyside Mine, or the American Tunnel;

124.    Declaring that all Defendants were negligent, grossly negligent, or both, and awarding the State of Utah compensatory, consequential, and punitive damages caused by Defendants' conduct, including but not limited to investigation, clean-up, and remedial costs, economic loss, loss of use, diminution in value, and stigma damages;

125.    Disgorging all profits made, or costs avoided, by the Owner Defendants because of their tortious and wrongful conduct;

126.    Ordering all Defendants to abate the nuisance and cure the trespass, including but not limited to the soil, sediments and groundwater in the Animas and San Juan Rivers and Lake Powell;

127.    Declaring that all Defendants are jointly and severally liable for all costs incurred and costs that may be incurred by the State of Utah to abate the nuisance and cure the trespass in the San Juan River and Lake Powell;

128.    Assessing civil penalties against the identified Defendants for each day that each Defendant violated the Utah Water Quality Act and/or the Utah Solid and Hazardous Waste Act.

129.    A jury trial is demanded for all issues subject thereto.

130.    Awarding the State of Utah its pre-judgment and post-judgment interest, to the extent not prohibited by law, and attorneys' fees, costs, and expenses, and such other and further

relief as the Court may deem just and equitable.

Dated: July 31, 2017

SEAN D. REYES
UTAH ATTORNEY GENERAL

By: _____
SPENCER E. AUSTIN

Attorneys for Plaintiff
STATE OF UTAH