Sean D. Reyes, Utah Bar # 7969
UTAH ATTORNEY GENERAL
Spencer E. Austin, Utah Bar # 150
Chief Criminal Deputy Attorney General
Craig L. Barlow, Utah Bar # 213
Assistant Attorney General
Utah Attorney General's Office
350 North State Street, Suite 230
Salt Lake City, Utah 84114-2320
Telephone:  (801) 366-0310
Facsimile:  (801) 366-0315
spenceraustin@agutah.gov

Peter Hsiao (*pro hac vice*)
Matthew L. Hofer (*pro hac vice*)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
phsiao@mofo.com

Attorneys for Plaintiff
THE STATE OF UTAH

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE STATE OF UTAH,<br><br>          Plaintiff,<br><br>     v.<br><br>ENVIRONMENTAL RESTORATION, LLC;<br>HARRISON WESTERN CORPORATION;<br>KINROSS GOLD CORPORATION;<br>KINROSS GOLD U.S.A., INC.;<br>SUNNYSIDE GOLD CORPORATION;<br>GOLD KING MINES CORPORATION;<br>UNITED STATES OF AMERICA;<br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY;<br>SCOTT PRUITT, in his official capacity as<br>Administrator, United States Environmental<br>Protection Agency; and WESTON<br>SOLUTIONS, INC.,<br><br>          Defendants. | Case No. 2:17-cv-00866-TS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Judge: The Honorable Ted Stewart |

la- 13693321

## COMPLAINT

### INTRODUCTION AND STATEMENT OF THE CASE

1.      On the morning of August 5, 2015, the U.S. Environmental Protection Agency ("EPA") and its contractors triggered an uncontrolled blowout at the Gold King Mine located about five miles north of Silverton, Colorado (the "Blowout").  The disaster dumped over three million gallons of acid wastes and toxic metals into Cement Creek and the Animas River, turning the river into a vivid orange brown color.  As the flow continued downstream, those hazardous wastes were deposited along the Animas and San Juan Rivers, until the plume reached Lake Powell in Utah on August 14, 2015.

2.      EPA conceded it is responsible for the Blowout and its impacts, stating:  "**EPA takes responsibility for the Gold King Mine release and is committed to continue working hand-in-hand with the impacted local governments, states and tribes.**" https://www.epa.gov/goldkingmine (emphasis added).

3.      EPA and its contractors acted wrongfully in causing the Blowout.  The mine owners and operators also acted wrongfully and are responsible for generating the toxic wastes and creating the conditions leading to the Blowout.

### JURISDICTION

4.      Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 (civil action arising under the laws of the United States), 1367 (supplemental jurisdiction), 2201 (declaratory relief), and 2202 (injunctive relief).

5.      Jurisdiction is also proper in this Court under 42 U.S.C. §§ 9613(b) and 9613(g)(2) for the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), under 42 U.S.C. § 6972(a)(1)(B) for the Resource Conservation and Recovery Act ("RCRA"), and under 33 U.S.C. § 1365(a) for the Clean Water Act ("CWA").

## VENUE

6.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(e)(1)(B), 42

U.S.C. § 9613(b) (CERCLA), 42 U.S.C. § 6972(a)(1)(B) (RCRA), and 33 U.S.C. § 1365(a)

(CWA).

## PARTIES

7.      The Attorney General for the State of Utah is authorized to bring this action for

the State of Utah.  UTAH CODE ANN. §§ 19-1-204, 67-5-1(2).

8.      Defendant EPA is an agency within the executive branch of the federal

government.  Its principal office is at 1200 Pennsylvania Avenue, N.W., Washington,

D.C. 20460.  Defendant Scott Pruitt is named in his official capacity as Administrator of

EPA.

9.      Defendant United States of America includes all agencies of the federal

government, including EPA.  On February 17, 2017, the State of Utah submitted a claim

to EPA under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*.  EPA has not made

a final determination of the claim within the six-month time period prescribed in 28

U.S.C. § 2675(a).

10.      Defendant Environmental Restoration is a Missouri limited liability company

with its principal office at 1666 Fabrick Drive, St. Louis, Missouri 63026.  Environmental

Restoration was EPA's primary contractor at all relevant times for emergency and rapid response

services ("ERRS") at the Gold King Mine.

11.      Defendant Weston Solutions, Inc. is a Pennsylvania corporation with headquarters

at 1400 Weston Way, West Chester, Pennsylvania 19380.  Weston Solutions was at all relevant

times the Superfund Technical Assessment and Response Team ("START") contractor for EPA

at the Gold King and Red and Bonita Mines.

12.      Defendant Harrison Western Corporation is a Colorado corporation with its

3

principal office located at 1208 Quail Street, Lakewood, Colorado 80215.  Harrison Western was at all relevant time a subcontractor for Environmental Restoration for mining services at the Gold King Mine.

13.     Defendant Kinross Gold Corporation ("Kinross") is a Canadian corporation with its principal office at 25 York Street, 17th Floor, Toronto, Ontario M5J 2V5, Canada.  Upon information and belief, Kinross currently owns the Sunnyside Mine and neighboring properties near Silverton, Colorado, through its subsidiaries Kinross Gold U.S.A., Inc. and Sunnyside Gold.

14.     Defendant Kinross Gold U.S.A., Inc. ("Kinross U.S.A.") is a Nevada corporation with a principal office registered with the Colorado Secretary of State at 5075 S. Syracuse Street, 8th Floor, Denver, Colorado 80237.  Upon information and belief, Kinross U.S.A. is a subsidiary of Defendant Kinross, and has transacted business in Colorado since 2003.  Kinross U.S.A. directly owns Defendant Sunnyside Gold.

15.     Defendant Sunnyside Gold Corporation is a Delaware corporation with a principal office registered with the Colorado Secretary of State at 5075 S. Syracuse Street, 8th Floor, Denver, Colorado 80237.  Upon information and belief, it currently owns the Sunnyside Mine and other properties near Silverton.

16.     Defendant Gold King Mines Corporation ("Gold King Corp.") is a Colorado corporation with its principal office located at 729 Reese Street, Silverton, Colorado 81433.  It formerly owned the Gold King Mine, and was at relevant times responsible for managing discharges from the Sunnyside Mine and other neighboring mines.

17.     The Defendant corporations fit into two groups.  The "Contractor Defendants" were EPA's contractors for the negligent work at the Gold King Mine site (Environmental Restoration, Weston Solutions, and Harrison Western).  The "Owner Defendants" were mine owners who generated the toxic waste and negligently created the dangerous conditions at the site (Kinross, Kinross U.S.A., Sunnyside Gold, and Gold King Corp.)

4

**GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

_Mining History and Early Reclamation Activity_

18.     The Gold King Mine is a former gold mine located in southwestern Colorado.

19.     Beginning in 1959, the owner of the nearby Sunnyside Mine developed the "American Tunnel" as a drainage and ore transportation passage for the Sunnyside Mine.  The American Tunnel was originally an exploratory tunnel into the Gold King vein system and provided a pathway for contaminated water to move from the Sunnyside Mine to the Gold King Mine.

20.     In 1991, Defendant Sunnyside Gold owned the Sunnyside Mine and closed it, operating a treatment facility for its contaminated wastewater.  In 1996, Sunnyside Gold signed a consent decree with the Colorado Department of Health and Environment purportedly allowing it to cease treating contaminated wastewater if it would undertake reclamation of other acid sources in the area.

21.     Sunnyside Gold installed hydraulic bulkheads in the American Tunnel and other locations.  The bulkheads blocked the drainage from the American Tunnel and reduced the discharge there, but caused acid drainage to flood the Sunnyside Mine.

22.     An "adit" is a horizontal passage into a mine.  After the Sunnyside Mine bullheads were installed in 1996, the toxic wastewater backed-up and entered the Gold King Mine causing it to discharge from the Gold King Mine Level 7 Adit.

23.     In 2000, toxic wastewater from the Sunnyside Mine also began discharging from the nearby Mogul Mine.  In 2003, Sunnyside Gold installed bulkheads at the Mogul Mine.

_Relationship Between Owner Defendants_

24.     In 2003, Defendant Kinross acquired Sunnyside Gold and its assets, including the Sunnyside Mine.  Upon information and belief, Kinross and Kinross U.S.A. controlled and directed Sunnyside Gold's activities at the Sunnyside Mine.

25.     Upon information and belief, on May 1, 2003 Kinross provided a $1,250,000 irrevocable letter of credit to the Colorado Division of Minerals and Geology as surety for its reclamation work at the American Tunnel, but later reduced and then eliminated the amount.

26.     In 2002, Mr. Todd Hennis, the owner of the Mogul Mine, sued Sunnyside Gold for its wastewater impacts to the Mogul Mine, but dropped the lawsuit after Sunnyside Gold agreed to install bulkheads at the Mogul and neighboring Koehler Mine.

27.     Upon information and belief, Sunnyside Gold transferred ownership of its water treatment facility and discharge permit for the American Tunnel to Gold King Corp. in January 2003.  Gold King Corp. and its owner Mr. Steve Fearn became the operators of the facility.

28.     Upon information and belief, the Colorado Department of Public Health and Environment Water Quality Control Division required Mr. Fearn to obtain a certification to operate the water treatment facility by June 30, 2004.  Upon further information and belief, Sunnyside Gold's manager of reclamation activities was to supervise Mr. Fearn until he acquired the certification.  Upon further information and belief, Mr. Fearn never obtained the certification, and use of the facility was discontinued.  In 2004, Gold King Corp. filed for bankruptcy, and Mr. Hennis acquired the Gold King Mine.

*Gold King Mine Reclamation Activities*

29.     The Gold King Mine operated under a mining permit in 1986.  The permit required that at the end of mining activities, the mining company close all four mine portals, and a bond was held to ensure that would be done.

30.     After Gold King Corp. discontinued operating the water treatment facility and filed for bankruptcy, the Colorado Division of Reclamation, Mining and Safety ("DRMS") imposed forfeiture of the bond and used it to fund reclamation work at the Gold King Mine site.

31.     In 2007, increased wastewater flow from the Gold King Mine Level 7 Adit caused a slope failure and landslide at the adit's waste-rock dump.  The debris blocked the entrance to

6

the adit.

32.     DRMS's Project Summary expressed concern that water could build up behind the collapsed material at that adit and eventually result in a blowout.  There was also concern about additional instability of the waste-rock dump.

33.     In 2009, DRMS unsuccessfully attempted to penetrate the debris blocking the adit with an observation pipe.  DRMS' efforts to close the adit did not provide adequate drainage and had the potential to cause a blowout.

34.     In 2014, DRMS requested EPA reopen and stabilize the adit.  By that time, the drainage system at the mine portal had not been maintained or monitored since its installation in 2009.

35.     EPA began a removal site evaluation to investigate the possibility of opening the collapsed mine portal in 2014, using the services of contractors under EPA Superfund Technical Assessment and Response Team ("START") and EPA Emergency and Rapid Response Service ("ERRS") contracts.

36.     Defendant Environmental Restoration was the ERRS contractor at the Gold King Mine and Defendant Weston Solutions was the START contractor.  Environmental Restoration subcontracted with Defendant Harrison Western for mining services at the Gold King Mine. Harrison Western participated in planning for work to be performed at the Gold King Mine in 2015 and was scheduled to deploy to the mine later in August 2015.  Each of the Contractor Defendants had independent authority and control to perform their duties and take the necessary actions to perform their work in a safe and proper manner, to avoid the Blowout and its damages.

37.     In its ERRS contract task order, EPA identified the following risks at the site:

> Conditions may exist that could result in a blow-out of the blockages
> and cause a release of large volumes of contaminated mine waters and

sediment from inside the mine, which contain concentrated heavy
metals.

EPA further specified that the work was to serve the following purpose:

[R]e-open the Gold King Mine portal and workings to investigate the
conditions to assess the on-going releases.   This will require the
incremental de-watering and removal of such blockages to prevent
blowouts.

38.    EPA's task order also acknowledged the risk of an unstable increase in the water
level inside Gold King Mine when the agency required that its ERRS contractor incrementally
dewater and remove blockage so as to prevent blowouts.

39.    When EPA and the Contractor Defendants began their excavation work in 2014,
they observed that seepage was emerging from the backfill at an elevation about six feet above
the adit floor.  They presumed water had accumulated behind the blockage.

40.    EPA and the Contractor Defendants incorrectly concluded there was six feet of
water impounded in the mine because seepage was not occurring higher up on the blockage.

41.    EPA and the Contractor Defendants suspended their work until 2015 because they
uncovered conditions that required them to plan to treat a greater quantity of water potentially
accumulated behind the blockage.

*The Blowout*

42.    On or about July 23, 2015, the EPA project leader and lead On Scene Coordinator
("OSC") Mr. Steven Way placed a phone call to Mr. Michael Gobla at the Bureau of
Reclamation ("BOR").  Mr. Way requested that Mr. Gobla conduct a site visit for the Gold King
Mine because Mr. Way was "unsure about the plans for the Gold King Mine" and wanted an
outside independent review of the EPA/DRMS plans by the BOR.  Mr. Gobla agreed to conduct
a site visit and review on August 14, 2015.

8

43.     Mr. Way, the lead OSC, was on vacation on August 4-5, 2015.  He was replaced at the Gold King site by the backup OSC, Mr. Hays Griswold, on those days.

44.     On August 4, 2015, EPA, DRMS, Environmental Restoration, and Weston Solutions ("EPA On Site Team") created a plan to conduct excavation activities at the Level 7 Adit.

45.     The EPA On Site Team observed contaminated water seeping out at an elevation about five or six feet above the floor of the adit.

46.     EPA and the Contractor Defendants assumed this meant that the contaminated water level was below the top of the adit.

47.     EPA and the Contractor Defendants also assumed because the mine was draining, it was not under pressure from the contaminated water behind it.

48.     Thus, EPA and the Contractor Defendants believed it was not necessary to directly test for the level or volume of contaminated water behind the blockage.  The EPA On Site Team did not properly investigate or identify the danger at the site.

49.     EPA and the Contractor Defendants did not insert a measuring device from a location at a higher elevation from the blockage at the adit to determine the level of contaminated water behind it.

50.     EPA and the Contractor Defendants did not take a measurement to determine the pressure of the contaminated water against the blockage at the adit.

51.     EPA and the Contractor Defendants did not take precautions to design or install containment measures, including but not limited to a secondary containment system, such as a catch basin of proper size and capability, to prevent an accidental release of large quantities of toxic wastewater from reaching the Animas River.

52.     EPA and the Contractor Defendants also did not take the precaution of developing and implementing emergency response procedures in the event of an accidental release of large

9

quantities of toxic wastewater, to prevent those toxic chemicals from reaching the Animas River. EPA and the Contractor Defendants did not provide advance warning to other agencies or municipalities of their work so that they could be prepared for an accident.

53.     EPA and the Contractor Defendants were required to develop a Health and Safety Plan that complied with OSHA requirements for hazardous waste site operations in 29 C.F.R. § 1910.120 and with EPA regulations for response actions per 40 C.F.R. § 300.700(c)(5)(i).  Their Health and Safety Plan did not comply with these requirements.

54.     EPA and the Contractor Defendants were subject to various mandatory laws, regulations, and policies that removed or circumscribed their discretion in carrying out the work at the Gold King Mine site, including but not limited to the Federal Mine Safety and Health Act of 1977 and Title 30, Code of Federal Regulations, Part 75.  *See* 30 U.S.C. § 877(b); 30 C.F.R. §§ 75.372, 75.388(a)(2), 75.1200.  Their conduct violated these laws, regulations, and policies.

55.     On August 5, 2015, the EPA On Site Team performed work at the Level 7 Adit.

56.     EPA and the Contractor Defendants did not accurately measure the level, volume, or pressure of the toxic wastewater behind the blockage before the EPA On Site Team performed their work on August 5, 2015.

57.     Members of the EPA On Site Team have given conflicting reports regarding their work.  Some believed their objective was to excavate the adit to create an opening.  Others believed the objective was to use a backhoe excavator to scratch the earth around the adit.

58.     On information and belief, this conflict was caused by miscommunication among EPA and the Contractor Defendants.  The EPA On Site Team intentionally performed their actions but did not clearly understand their work, or how to safely and properly accomplish the work given the dangers presented by the site.

59.     The intentional actions of the EPA and Contractor Defendants caused a

10

breach in the adit, resulting in the Blowout.  *See* The HARRY READ ME File, *EPA releases Gold King Mine blowout footage: 'Get outta here?!…What do we do now?'*, YOUTUBE (Sept. 10, 2015), https://www.youtube.com/watch?v=ZBlR05tDCbI.  *See also* The HARRY READ ME File, *EPA on striking water at Gold King Mine: 'We thought we'd opened up a spring'*, YOUTUBE (Sept. 15, 2015), https://www.youtube.com/watch?v=hxWjAsVvL74.  The actions, events, and facts contained in these videos are true and accurate, and are incorporated by reference as if fully set forth herein.[1]  These facts and the failures of EPA and the Contractor Defendants to take reasonable and necessary precautions before, during, and after the Blowout were wrongful, and did not constitute the performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government.  Each of the Contractor Defendants had an independent duty and the authority to take the necessary actions and to perform their work in a manner to prevent the Blowout.

60.    The Blowout released approximately 3,000,000 gallons of hazardous, toxic orange-brown wastewater into the Animas River.

61.    Toxic wastes from the Blowout have been and are being transported through the Animas and San Juan River system to Lake Powell in the State of Utah, among other locations. Defendants knew or should have known that the release of contaminants could and would be transported to the State of Utah to damage its environment, and intentionally committed the actions that resulted in the release.  Investigations are ongoing.

62.    The Blowout has caused environmental, economic, and other damage to the State of Utah, and will require the incurrence of recoverable costs from Defendants, including but not limited to those for the immediate response, investigation, remediation, restoration and

---

[1] Copies of these videos have been conventionally filed under separate cover.

compensation for damages, lost environmental values and use.

63.     To date, EPA is not and has not engaged in a removal action in the State of Utah for the contamination caused by the Blowout.  EPA has not incurred costs to initiate a Remedial Investigation and Feasibility Study in the State of Utah.  EPA is not diligently proceeding with a remedial action in State of Utah for the Blowout.  EPA has not determined whether it will commence such actions in the State of Utah, or when it will commence and diligently proceed with such actions in the State of Utah.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**COST RECOVERY AND OTHER RELIEF UNDER CERCLA 42 U.S.C. § 9607(a) AGAINST EPA (AND ITS ADMINISTRATOR), ENVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.**

64.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

65.     Defendants are "persons" under CERCLA.  42 U.S.C. § 9601(22).

66.     The Owner Defendants are "owners" and "operators" of the Sunnyside Mine, or were "owners" and "operators" at the time hazardous substances were disposed of at the Sunnyside Mine.  42 U.S.C. §§ 9607(a)(1)-(2).

67.     Gold King Corp. was an "owner" and "operator" of the Gold King Mine at relevant times when hazardous substances were released or disposed of at that facility.

68.     By managing, directing, and implementing reclamation activities at the Gold King Mine site, EPA and the Contractor Defendants were "operators" of the Gold King Mine when the Blowout occurred.

69.     Defendants are "arrangers" under CERCLA because they, by contract, agreement or otherwise, intentionally arranged for the disposal, treatment, and/or transport of hazardous

12

substances released from the Gold King Mine and other nearby mines.  42 U.S.C. § 9607(a)(3).
Defendants owned or possessed the hazardous substances that were released in the Blowout.

70.     Leading up to and at the time of the Blowout, the Contractor Defendants accepted
hazardous substances from the Sunnyside Mine and the Gold King Mine, and undertook to
dispose, treat, and transport hazardous substances to disposal or treatment facilities, or sites
selected by the Contractor Defendants.  Releases of hazardous substances from those facilities
and/or sites occurred.  The Contractor Defendants were thus "transporters" under CERCLA.  42
U.S.C. § 9607(a)(4).

71.     The Contractor Defendants are "response action contractors" under CERCLA.  42
U.S.C. § 9619(a).  Under CERCLA § 9619(a)(2), a response action contractor shall be liable for
a release caused by its negligence, gross negligence, or intentional misconduct.  The Contractor
Defendants' negligence, gross negligence, and intentional misconduct caused or contributed to
the release of hazardous substances from the mines.

72.     The Gold King Mine and Sunnyside Mine are "facilities" under CERCLA.  42
U.S.C. § 9601(9).  Furthermore, the numerous downstream reaches of the San Juan River and
Lake Powell, where hazardous substances from the mines have been deposited, are separate
"facilities" under CERCLA.

73.     "Releases" of "hazardous substances"—including but not limited to arsenic, lead,
mercury, cadmium, aluminum, and zinc—from these facilities have occurred and are still
occurring.  42 U.S.C. §§ 9601(22) and (14).  These releases include the August 5, 2015 Blowout,
as well as past and present releases from the Sunnyside mine pool through the Gold King Mine,
the Sunnyside Mine, and surrounding areas owned or operated by Defendants.  Defendants'
actions substantially caused and contributed to the contamination in the State of Utah, including
but not limited to the San Juan River and Lake Powell, and they are jointly and severally liable
for the resulting indivisible harms and contamination.

74.     The State of Utah is a "State" authorized to recover costs to assess damages, and damages and the cost of restoration to natural resources under CERCLA.  42 U.S.C. § 9607(a). Section 9607(a) provides that the State of Utah may also recover interest on response costs incurred.  The State of Utah in no way caused, contributed to, or consented to the Blowout, and is not affiliated with any other party that is potentially liable for the response costs.

75.     The State of Utah has taken reasonable steps to investigate and respond to the release from the Blowout.

76.     Because of these releases and the substantial threat of future releases, the State of Utah has incurred and continues to incur response costs that are both "necessary" and "not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a)(4) and (a)(4)(B).  These costs include but are not limited to costs associated with the response, investigation, remediation, restoration, and compensation for lost environmental values and use; providing clean water supplies to the people of the State of Utah; testing and assessing the quality of the soil and water affected by the Blowout; responding and reacting to the crisis; and attorneys' fees, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**DECLARATORY JUDGMENT UNDER CERCLA 42 U.S.C § 9613(G)(2) AGAINST EPA (AND ITS ADMINISTRATOR), ENVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.**

77.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

78.     CERCLA specifies that in any action for recovery of costs under 42 U.S.C. § 9607 "the court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs . . . ." 42 U.S.C. § 9613(g)(2).

14

79.     The State of Utah will continue to incur response costs, including but not limited to those required to address the contamination from the Blowout in the State of Utah, such as in the San Juan River and Lake Powell.

80.     The State of Utah is entitled to entry of a declaratory judgment that Defendants are jointly and severally liable for future costs and damages, including but not limited to response costs and natural resource damages assessment costs and damages based on the contamination in the State of Utah, such as in the San Juan River and Lake Powell, to the extent that those costs are not inconsistent with the National Contingency Plan.

### THIRD CAUSE OF ACTION

**NEGLIGENCE AND GROSS NEGLIGENCE AGAINST THE UNITED STATES, ENRVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.**

81.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

82.     Defendants knew or should have known about the presence and potential for spreading of contamination at Gold King Mine, and had a duty to design and plan their tasks, including but not limited to those to oversee, manage, maintain, and regulate the Gold King Mine and Sunnyside Mine with reasonable care.  They also had a duty to conduct all investigations and work activities at the mines with reasonable care.  This includes, but is not limited to, following reasonable engineering, mining, safety, and other applicable standards in the industry, as well as EPA and OSHA regulations.  They also had a duty to take reasonable precautions in case of an accidental release, including but not limited to implementing secondary containment measures and an emergency response plan.  It was foreseeable that the failure to use reasonable care in performing these activities would cause injuries and damages to states, local communities, and individuals downstream of the mines, including the State of Utah.

15

83.     Defendants knew or should have known that the conditions at the Gold King Mine presented a high risk of significant harm to the State of Utah and other downstream communities, but Defendants acted in disregard of that risk.

84.     Defendants acted with negligence, gross negligence, carelessly, recklessly, intentionally, and wantonly in managing and disposing of contaminated wastewater in the Gold King Mine and other area mines, such that they directly and proximately caused contamination of the San Juan River, Lake Powell, and the surrounding environs.

85.     EPA and the Contractor Defendants additionally breached their duties and acted with negligence and gross negligence by excavating and allowing the excavation prior to the arrival of the subcontractor with the experience and expertise necessary to safely excavate the Gold King Mine adit.

86.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, the State of Utah has incurred, is incurring, and will continue to incur damages, including but not limited to investigation, treatment, remediation, and monitoring costs and expenses related to the contamination of its land and water in an amount to be proven at trial.

87.     Defendants acted together to create the conditions that harmed the State of Utah. The harm caused by Defendants' tortious conduct is indivisible and they are jointly and severally liable.

88.     For the reasons set forth and specifically alleged above, Defendants acted maliciously, wantonly, recklessly, and with conscious disregard of the known risks of injury to others, including the State of Utah.  The State of Utah is entitled to an award of punitive damages against the Contractor Defendants and Owner Defendants that is sufficient to punish them and that fairly reflects the aggravating circumstances alleged herein.

///

///

16

la-1369332

## FOURTH CAUSE OF ACTION

### NUISANCE AGAINST THE UNITED STATES, ENVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.

89. The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

90. The use and enjoyment of the San Juan River, Lake Powell, and other areas in the State of Utah, including but not limited to the biota, lands, waters, and sediments therein, are rights common to, and belonging to, all members of the public.

91. Defendants' negligent, grossly negligent, reckless, and/or intentional conduct caused the Blowout on August 5, 2015.

92. The contamination and other harms resulting from the Blowout have unreasonably interfered with the State of Utah's interests and the public's use and enjoyment, including but not limited to the San Juan River and Lake Powell.

93. Defendants' negligent, grossly negligent, reckless, and/or intentional actions have directly and proximately caused contamination that significantly interferes with the State of Utah's interests and the public health, the public safety, the public comfort, and the public convenience.

94. Defendants' conduct is proscribed by applicable state and federal statutes, ordinances, and/or administrative regulations.

95. The resulting contamination in the State of Utah, including but not limited to that of the San Juan River and Lake Powell and surrounding environs that resulted from releases of hazardous substances caused by Defendants, constitutes a physical invasion of public and private property.

96. The State of Utah has suffered special injuries, which the public as a whole does not share.  The State of Utah has and will continue to suffer lost economic activity, tax revenues,

17

and stigmatic damages arising from these releases.  This unlawful interference by the Defendants directly and proximately caused, and continues to cause, injury to the State and people of the State of Utah's property and other legal interests.

97.     The past, present, and ongoing conduct of Defendants, and the contamination caused by their conduct, constitute a public and private nuisance.  These injuries are continuing and have caused long-lasting, possibly permanent, harm to the State of Utah's public and its environment.  This public and private nuisance will continue as long as the San Juan River, Lake Powell, and other areas in the State of Utah areas are contaminated with the hazardous waste released in the Blowout.

98.     Defendants acted in concert, or successively.  The harm caused by Defendants' tortious conduct is indivisible and they are jointly and severally liable.

99.     The State of Utah is entitled to recover damages from Defendants in an amount to be proven at trial.

100.     The State of Utah is entitled to entry of an order compelling Defendants, jointly and severally, to abate the nuisance.

101.     For the reasons set forth and specifically alleged above, the State of Utah is entitled to an award of punitive damages against the Contractor Defendants and Owner Defendants that is sufficient to punish them and that fairly reflects the aggravating circumstances alleged herein.

## FIFTH CAUSE OF ACTION

**VIOLATION OF THE UTAH WATER QUALITY ACT AGAINST ENVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.**

102.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

103.     The Owner Defendants and Contractor Defendants are all "persons"

18

within the meaning of the Utah Water Quality Act, UTAH CODE ANN. § 19-5-101 *et seq.*

104.    By taking the actions described above, the Owner Defendants and Contractor Defendants have discharged pollutants into waters of the State of Utah.  UTAH CODE ANN. § 19-5-107(1)(a).

105.    The Owner Defendants and Contractor Defendants have caused pollution that is harmful to wildlife, fish and/or aquatic life, and/or impairs domestic, agricultural, industrial, recreational, and/or other beneficial uses of water.  *Id.*

106.    The Owner Defendants and Contractor Defendants have placed wastes and/or caused wastes to be placed in a location where there was probable cause to believe the wastes would cause pollution.  *Id.*

107.    Accordingly, the Owner Defendants and Contractor Defendants are liable to the State of Utah for damages, a penalty of up to $10,000 per day of violation, a temporary or permanent injunction to address the violation, and other relief as the Court deems appropriate.  UTAH CODE ANN. §§ 19-5-115(2), (7)(a); 19-1-303(1)(a)(i).

108.    These violations of law and the resulting harms are continuing and ongoing.  Each day the pollutants are present or persist in the State of Utah's soil, sediment, and water constitutes a separate and independent violation.

## SIXTH CAUSE OF ACTION

**VIOLATION OF THE UTAH SOLID AND HAZARDOUS WASTE ACT AGAINST ENVIRONMENTAL RESTORATION, WESTON SOLUTIONS, HARRISON WESTERN, KINROSS, KINROSS U.S.A., SUNNYSIDE GOLD, AND GOLD KING CORP.**

109.    The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

110.    The Owner Defendants and Contractor Defendants are all "persons" within the meaning of the Utah Solid and Hazardous Waste Act, UTAH CODE ANN. § 19-

6-101 *et seq.*

111.     The Blowout released hazardous substances into the waters and land of the State of Utah, within the meaning of the Utah Solid and Hazardous Waste Act.  UTAH CODE ANN. § 19-6-102(10).

112.     By taking the actions described above, the Owner Defendants and Contractor Defendants are contributing or have contributed to the handling, transportation, treatment, storage, or disposal of a solid or hazardous waste which presents an imminent and substantial danger to the environment.  *Id.*

113.     Accordingly, the Owner Defendants and Contractor Defendants are liable for a penalty of up to $13,000 per day of violation, a temporary or permanent injunction to address the violation, and other relief as the Court deems appropriate.  *Id.*; UTAH CODE ANN. §§ 19-6-113(2); 19-1-303(1)(a)(i).

114.     These violations of law and the resulting harms are continuous and ongoing, and each day that the hazardous wastes are present or persist in the State of Utah's soil, sediment, or water constitutes an additional violation.

## SEVENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF UNDER RCRA 42 U.S.C. § 6972(a)(1)(B) AGAINST EPA AND ITS ADMINISTRATOR

115.     The State of Utah incorporates the allegations in all preceding paragraphs as if fully set forth herein.

116.     RCRA authorizes citizen suits against "any person . . . including the United States and any other governmental instrumentality or agency . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. §

6972(a)(1)(B).   Under RCRA, a court may order any person referred to in paragraph (1)(B) "to take such . . . action as may be necessary" to eliminate endangerment to health or the environment.  42 U.S.C. § 6972(a).

117.    RCRA defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).

118.    The State of Utah is a "person" under RCRA, 42 U.S.C. § 6903(15), and is entitled to commence a civil action under RCRA's citizen suit provision.

119.    EPA is a "person" under RCRA.  42 U.S.C. § 6903(15).  EPA is also an operator of the Gold King Mine facility, which treats, stores, and disposes of hazardous waste.  42 U.S.C. § 6903(3), (33)-(34).

120.    The Blowout discharged toxics, including but not limited to arsenic, lead, mercury, cadmium, copper, and zinc into the San Juan River and Lake Powell.  These substances are "hazardous wastes" and/or "solid wastes" under RCRA.  42 U.S.C. § 6903(5)(B).

121.    EPA acted as a "person," and/or as an operator of the Gold King Mine facility, in causing the Blowout.  EPA thereby contributed and is contributing to the storage, treatment, and disposal of hazardous and/or solid wastes, which present an imminent and substantial endangerment to health and the environment in the State of Utah, including but not limited to the San Juan River and Lake Powell.

122.    By a letter dated February 26, 2016, the State of Utah notified EPA of its intent to file suit under RCRA to restrain or abate the conditions that present or may present an imminent and substantial endangerment to health or the environment in the

21

State of Utah.  This letter followed the notice requirements found in 42 U.S.C. § 6972(b).
The imminent and substantial threats described in that letter are continuing or reasonably
likely to continue.

123.    The State of Utah is entitled to entry of an injunction that may require,
among other things, a full investigation and remediation of the contamination in the State
of Utah caused by the Blowout, including but not limited to the San Juan River and Lake
Powell, and the full recovery of its attorney fees and costs.

## EIGHTH CAUSE OF ACTION

### AGAINST EPA AND ITS ADMINISTRATOR UNDER CWA 33 U.S.C. § 1365(h)

124.    The State of Utah incorporates the allegations in all preceding paragraphs
as if fully set forth herein.

125.    The CWA prohibits "the discharge of any pollutant by any person."  33
U.S.C. § 1311(a).  A state or federal agency is a "person" under the CWA.  40 C.F.R. §
122.2.  Discharges from inactive mines are "pollutants" under the CWA.  40 C.F.R. §
122.26(b)(14)(iii).

126.    A Governor of a State may commence a civil action against the EPA
Administrator when the Administrator allegedly failed "to enforce an effluent standard or
limitation under this chapter the violation of which is occurring in another State and is
causing an adverse effect on the public health or welfare in his State, or is causing a
violation of any water quality requirement in his State."  33 U.S.C. § 1365(h).

127.    An "effluent standard or limitation under this chapter" includes "an
unlawful act" under Section 301(a) of the CWA, such as "the discharge of any pollutant
by any person."  33 U.S.C. §§ 1311(a), 1365(f)(1).

128.    By causing the Blowout, EPA and its Administrator discharged pollutants
into the San Juan River and Lake Powell within the State of Utah and thereby failed to

enforce an "effluent standard or limitation." These pollutants caused an adverse effect on public health and welfare in the State of Utah, and further violated the State of Utah's water quality requirements, including but not limited to relevant provisions of the Utah Solid and Hazardous Waste Act and the Utah Water Quality Act, as described above.

129.   Accordingly, the State of Utah is authorized to compel the EPA Administrator to abate the pollutants released in the Blowout that have contaminated soil, sediment, and water within the State of Utah.

## JURY TRIAL DEMAND

130.   The State of Utah demands a jury trial for all appropriate issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the State of Utah prays for an order and judgment:

131.   Declaring that all Defendants are jointly and severally liable under CERCLA, 42 U.S.C. § 9607(a), for all costs, including prejudgment interest incurred by the State of Utah in responding to releases or threatened releases of hazardous substances from the Gold King, the Sunnyside Mine, or the American Tunnel to the date of judgment;

132.   Declaring that all Defendants are jointly and severally liable under CERCLA, 42 U.S.C. § 9613(g)(2), for all response costs that will be incurred by the State of Utah in responding to releases or threatened releases of hazardous substances from the Gold King Mine, the Sunnyside Mine, or the American Tunnel;

133.   Declaring that all Defendants were negligent, grossly negligent, or both, and awarding the State of Utah compensatory, consequential, and punitive damages caused by Defendants' conduct, including but not limited to investigation, clean-up, and remedial costs, economic loss, loss of use, diminution in value, and stigma damages;

134.   Declaring that EPA is in violation of RCRA's imminent and substantial

23

endangerment provision, 42 U.S.C. § 6972(a)(1)(B), until it remediates the contamination resulting from the Blowout;

135.    Compelling Defendants to investigate, remediate and abate the pollution caused by the Blowout that contaminated the environment in the State of Utah;

136.    Ordering disgorgement of all profits made, or costs avoided, by Defendants because of their tortious and wrongful conduct;

137.    Ordering Defendants by injunction or other appropriate direction to abate the nuisance, including but not limited to the soil, sediments, and groundwater in the State of Utah, including but not limited to the San Juan River and Lake Powell;

138.    Declaring Defendants are jointly and severally liable for all costs incurred and costs that may be incurred by the State of Utah to abate the nuisance in the State of Utah, including but not limited to the San Juan River and Lake Powell;

139.    Assessing civil penalties against the Owner Defendants and Contractor Defendants for each day that each Defendant violated the Utah Water Quality Act and/or the Utah Solid and Hazardous Waste Act.

140.    Awarding the State of Utah its pre-judgment and post-judgment interest, to the extent not prohibited by law, and attorneys' fees, costs, and expenses, and such other and further relief as the Court may deem just and equitable.

Dated: January 4, 2018

SEAN D. REYES
UTAH ATTORNEY GENERAL


By:      /s/ Spencer E. Austin
         SPENCER E. AUSTIN

24

Dated: January 4, 2018            MORRISON & FOERSTER LLP

By:_____/s/ Peter Hsiao_____
        PETER HSIAO

        Attorneys for Plaintiff
        THE STATE OF UTAH

la-1369332